NEWSOM, Circuit Judge, concurring:
 

 I agree that, in the "circumstances" that he confronted, the Fourth Amendment permitted Officer Williams to seize the bullet that he felt in Johnson's pocket,
 
 see
 
 Majority Op. at 997-98, and I therefore join the Court's opinion. I write separately to clarify that if it were up to me, rather than tying that judgment to the particular situation faced by the particular officer in this particular case, I would simply hold, as a prophylactic matter, that if a policeman discovers a bullet during the course of an otherwise-lawful
 
 Terry
 
 stop, he can seize it as a means of "neutraliz[ing] the threat" to himself and others.
 
 Terry v. Ohio
 
 ,
 
 392 U.S. 1
 
 , 30,
 
 88 S.Ct. 1868
 
 ,
 
 20 L.Ed.2d 889
 
 (1968).
 

 My concern with a fact-bound "totality-of-the-circumstances" approach is simply stated: It can leave police officers guessing-and thus potentially hesitant, and thus potentially vulnerable. The majority enumerates a variety of factors that it says justified Officer Williams's determination that seizing the bullet was appropriate here: (1) it was 4:00 a.m.; (2) he was patrolling a "high-crime area"; (3) he had answered a call about a potentially violent residential burglary; (4) he encountered Johnson "in a dark alley"; and (5) "the scene was not yet secure." Majority Op. at 998. That all seems perfectly sensible to me. And more than just sensible, given my understanding of
 
 Terry
 
 it also seems perfectly correct: In the light of the particular situation that he faced-or the dark of it, as the case may be-Officer Williams reasonably concluded that there was a sufficient threat to his (and others') safety to warrant confiscating the bullet.
 

 In fairness, though, the dissent also has a totality-of-the-circumstances story to tell. It highlights the following "combination of facts" known to Officer Williams before he frisked Johnson: "(1) there had been no report or indication of a weapon or an accomplice at the scene; (2) at least two other armed officers had arrived at the scene; (3) Mr. Johnson had immediately, peacefully, and
 
 at gunpoint
 
 complied with the officers' commands; and (4) the officers had placed Mr. Johnson on the ground and handcuffed him." J. Pryor Dissenting Op. at 1028 (footnote call omitted). Speaking for myself, I find the dissent's laundry list somewhat less compelling than the majority's-it seems clear to me, for instance, that a handcuffed suspect can still threaten officer safety,
 
 see, e.g
 
 .,
 
 United States v. Sanders
 
 ,
 
 994 F.2d 200
 
 , 209-10 (5th Cir. 1993) -but I certainly can't dismiss the dissent's assessment of the situation as ridiculous or groundless.
 

 So even in this case-and even now, more than three years after the fact, from the cozy comfort of our respective judicial
 chambers-we're having a healthy, good-faith debate about whether the "totality of the circumstances" warranted Officer Williams's seizure of the bullet. And although I find that the balance tips in Officer Williams's-and thus the majority's-favor, there are, I must admit, decent arguments on both sides. What I worry about is the next case-and the one after that, and the one after that-which will inevitably involve a different mix of variables. Let's take, for instance, "time of day," which the majority emphasizes-Officer Williams responded to the call here in the wee hours, around 4:00 a.m. Majority Op. at 997-98. What if, instead, he had encountered Johnson in broad daylight in the middle of the afternoon? Same result? How about "location of the scene"?
 
 Id
 
 . Opa-Locka is apparently a pretty tough neighborhood-a "high-crime area."
 
 Id
 
 . But what if we head 10 miles due south, straight down FL-953, to Coral Gables? (For our Alabama readers, think Mountain Brook or Vestavia Hills; for the Georgians, Milton or Sandy Springs.) Seizure still permissible? Now consider a few of the factors that the dissent brings to bear. By the time the bullet was seized, there were a total of three armed officers on the scene.
 
 See
 
 J. Pryor Dissenting Op. at 1026-27. But what if an officer confronts a suspect alone? Still a Fourth Amendment violation? The dissent also stresses that Johnson was handcuffed-and thus essentially incapable of retrieving and deploying the stashed ammo.
 
 Id
 
 . Different result if the suspect isn't yet securely restrained at the time the officer feels the bullet?
 

 You get my point. Even we judges-with the luxury of time for study and reflection-can't say for certain how we would crunch those factors in future cases. Where in the world does that leave responding officers? Policemen and women are tasked with the often-unenviable task of protecting the public safety, and in so doing they must make split-second judgments about how best to secure a scene or situation. I would rather not require them to work their way through a multi-factor Fourth Amendment balancing analysis in order to determine whether the decision to confiscate a bullet-a bullet!-will stand up to after-the-fact judicial second-guessing. I would prefer-and I believe Supreme Court precedent supports-a clear rule authorizing the seizure. The Court "repeatedly has acknowledged," in all manner of cases, "the difficulties created for courts, police, and citizens by an ad hoc, case-by-case definition of Fourth Amendment standards to be applied in differing factual circumstances."
 
 Oliver v. United States
 
 ,
 
 466 U.S. 170
 
 , 181,
 
 104 S.Ct. 1735
 
 ,
 
 80 L.Ed.2d 214
 
 (1984). Such totality-of-the-circumstances balancing, the Court has stressed, "not only makes it difficult for the policeman to discern the scope of his authority"-the thrust of my critique here-but "also creates a danger that constitutional rights will be arbitrarily and inequitably enforced."
 
 Id
 
 . at 181-82,
 
 104 S.Ct. 1735
 
 .
 
 [1]
 

 Now I recognize, of course, that in
 
 Terry
 
 the Supreme Court excused itself from "develop[ing] at length" the Fourth Amendment rules that govern the sorts of searches at issue here, saying that they could instead be worked out in "the concrete factual circumstances of individual cases." 392 U.S. at 29,
 
 88 S.Ct. 1868
 
 . The Court, though, didn't leave
 
 everything
 
 in a state of totality-of-the-circumstances limbo. Instead, in the very same paragraph, the Court both clarified an overarching principle-namely, that protective searches must be justified by a concern for "the protection of the police officer and others nearby"-and then identified an illustrative list of items whose seizure would, as a
 
 per se
 
 matter, be deemed to serve that purpose: "guns, knives, clubs, [and] other hidden instruments for the assault of the police officer."
 
 Id
 
 . To be clear,
 
 no one
 
 thinks that when an officer conducting a
 
 Terry
 
 frisk identifies a "gun" he has to pause to brainstorm whether the particular circumstances in which he finds himself warrant a seizure; he can simply take it. Same for a "knife" or a "club"-take it. The question for me, therefore-since I'm the one advocating a clear rule to guide officer conduct-is whether a bullet fairly fits within
 
 Terry
 
 's catch-all category, "other hidden instruments for the assault of the police officer." I think it does. An "instrument" is an "object, device, or apparatus designed or used for a particular purpose or task."
 
 Oxford English Dictionary
 
 (online ed.) Simply as a matter of plain language, it doesn't seem to me too far a stretch to conclude that a bullet qualifies as an "object" that can be "used" to assault a police officer. And that seems to me all the more true given
 
 Terry
 
 's unmistakable focus on officer safety.
 

 So in the next "bullet case," rather than asking-or worse, requiring the responding officer to ask-whether the neighborhood is sufficiently scary, the hour sufficiently late, the light sufficiently dim, and the suspect and scene sufficiently secure, I would simply hold that the Fourth Amendment permits the protective seizure.
 

 BRANCH, Circuit Judge, joined by GRANT, Circuit Judge, concurring:
 

 I join the majority opinion in full. The Fourth Amendment certainly authorized Officer Williams to seize the ammunition from Paul Johnson, Jr.'s pocket. I agree with Judge Newsom's concurrence insofar as it recognizes that a bullet falls within the list of items that
 
 Terry
 
 authorized an officer to seize during a lawful frisk-"guns, knives, clubs, [and] other hidden instruments for the assault of the police officer."
 
 Terry v. Ohio
 
 ,
 
 392 U.S. 1
 
 , 29,
 
 88 S.Ct. 1868
 
 ,
 
 20 L.Ed.2d 889
 
 (1968). I write separately to clarify two points: (1) the totality of the circumstances analysis in
 
 Terry
 
 applies only when the officer is determining whether (a) to stop and (b) then to frisk the detained person; and (2) if the officer conducting the frisk complies with the scope of the search permitted by
 
 Terry
 
 and feels what the officer reasonably believes is a bullet, the officer may in all circumstances seize it.
 

 The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The Fourth Amendment prohibits only unreasonable searches and seizures.
 
 Terry
 
 , 392 U.S. at 9,
 
 88 S.Ct. 1868
 
 (quoting
 
 Elkins v. United States
 
 ,
 
 364 U.S. 206
 
 , 222,
 
 80 S.Ct. 1437
 
 ,
 
 4 L.Ed.2d 1669
 
 (1960) ). An officer may stop an individual for questioning upon reasonable suspicion that criminal activity "may be afoot."
 
 Id.
 
 at 30,
 
 88 S.Ct. 1868
 
 . The reasonable suspicion inquiry which justifies a
 
 Terry
 
 stop must be assessed by taking into account "the totality of the circumstances-the whole picture."
 
 United States v. Cortez
 
 ,
 
 449 U.S. 411
 
 , 417,
 
 101 S.Ct. 690
 
 ,
 
 66 L.Ed.2d 621
 
 (1981). Once an officer makes a
 
 Terry
 
 stop, if the officer also believes, based on the surrounding circumstances, that the individual "is armed and presently dangerous to the officer or to others," the officer may conduct a search of the suspect's outer clothing "to discover weapons which might be used to assault him,"
 
 Terry
 
 , 392 U.S. at 30,
 
 88 S.Ct. 1868
 
 .
 

 The search must be limited in scope based on the sole justification of the search-the protection of the police officer and others nearby-and therefore, must be "reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer."
 

 Id.
 

 at 29
 
 ,
 
 88 S.Ct. 1868
 
 . If, during the pat down, the officer "feels a concealed object that he reasonably believes may be a weapon," he may extend the search by reaching into the suspect's pocket and removing the object.
 
 United States v. Clay
 
 ,
 
 483 F.3d 739
 
 , 743-44 (11th Cir. 2007).
 

 The initiation of the stop and the initiation of the pat down are the only two points in the encounter at which the officer's reasonable belief must be assessed based on the totality of the circumstances.
 
 See
 

 State v. Smith
 
 ,
 
 136 Ariz. 273
 
 ,
 
 665 P.2d 995
 
 , 998 (1983) (finding that an officer was justified in conducting a pat down based on the "circumstances," and that "the police reasonably decided to inspect [and seize] the contents of [the suspect's] pockets which were bulging with shotgun ammunition"). Once the officer is authorized to conduct the pat down, the only questions are whether the limited scope of the pat down is proper under
 
 Terry
 
 and whether, during the lawful pat down, the officer "feels a concealed object that he reasonably believes may be a weapon,"
 
 Clay
 
 ,
 
 483 F.3d at 743
 
 .
 
 See
 

 United States v. Rochin
 
 ,
 
 662 F.3d 1272
 
 , 1273 (10th Cir. 2011) ("the [Fourth] Amendment's ever-present reasonableness requirement places strict limits on the scope or nature of the frisk an officer may administer"). If he does not reasonably believe the object is a weapon, he is not entitled to extend the search beyond the pat down of the suspect's outer clothing, for instance, by reaching into a pocket.
 
 Sibron v. New York
 
 ,
 
 392 U.S. 40
 
 , 65,
 
 88 S.Ct. 1889
 
 ,
 
 20 L.Ed.2d 917
 
 (1968) (holding that an officer who reached into a pocket and found narcotics without first detecting a weapon exceeded the bounds of a lawful
 
 Terry
 
 search). If he does reasonably believe the object is a weapon, he is entitled to extend the search by "reach[ing] for and remov[ing]" the weapon.
 
 Terry
 
 , 392 U.S. at 29-30,
 
 88 S.Ct. 1868
 
 .
 

 Determining whether the object the officer feels is a weapon does not depend on the totality of the circumstances but on whether the officer reasonably concludes based on feel that the object is a weapon.
 
 See
 

 Minnesota v. Dickerson
 
 ,
 
 508 U.S. 366
 
 , 376,
 
 113 S.Ct. 2130
 
 ,
 
 124 L.Ed.2d 334
 
 (1993) (explaining that "[t]he very premise of
 
 Terry
 
 ... is that officers will be able to detect the presence of weapons through the sense of touch"). Provided that the officer was justified in stopping the suspect and conducting a pat down and provided that the pat down did not exceed the "scope of a protected frisk," the "one question" is "did [the officer] act unreasonably when he removed" the object.
 
 United States v. Holmes
 
 ,
 
 385 F.3d 786
 
 , 789-91 (D.C. Cir. 2004) (concluding that an officer acted reasonably in removing a "hard,
 square object" from the suspect's jacket pocket that turned out to be a scale).
 

 In the
 
 Terry
 
 frisk context, a bullet is an "instrument[ ] for the assault of the police officer,"
 
 Terry
 
 , 392 U.S. at 29,
 
 88 S.Ct. 1868
 
 , that an officer may reasonably remove pursuant to a pat down. As Judge Newsom points out, no one would question that an officer conducting a
 
 Terry
 
 frisk may always remove a gun he discovers during the search-regardless of the surrounding circumstances.
 
 See
 

 id.
 

 at 29-30
 
 ,
 
 88 S.Ct. 1868
 
 ;
 
 see also
 

 Pennsylvania v. Mimms
 
 ,
 
 434 U.S. 106
 
 , 111-12,
 
 98 S.Ct. 330
 
 ,
 
 54 L.Ed.2d 331
 
 (1977) (concluding that an officer who observed a bulge in a suspect's jacket was authorized to conduct a
 
 Terry
 
 pat down and seize the gun);
 
 United States v. White
 
 ,
 
 593 F.3d 1199
 
 , 1202 (11th Cir. 2010) (affirming the denial of a motion to suppress a gun found during a
 
 Terry
 
 frisk pursuant to an authorized
 
 Terry
 
 stop and frisk). The same reasoning applies to a bullet. Guns and bullets are of a piece; they go together. And one is no use without the other. In a
 
 Terry
 
 frisk context, a bullet poses substantially the same risk that a gun does-that it will be used as part of a dangerous combination to assault the officer. An officer seizing a gun does not know whether that gun is loaded, yet no one would dispute that the seizure of a gun is lawful even if it turns out that the gun is unloaded.
 
 [1]
 
 Similarly, an officer seizing a bullet may not know in a particular instance whether there is a gun nearby or if he missed a gun in the frisk. Of course he would know that the bullet is not presently in a gun and must first be loaded into a gun but the risk remains largely the same. Therefore, an officer conducting a
 
 Terry
 
 frisk that is authorized by a reasonable belief that the suspect is armed is entitled to seize a bullet to the same extent he is entitled to seize a gun-regardless of the surrounding circumstances. It does not matter whether the frisk occurs in daylight hours or at night; nor does it matter if it occurs in high crime area or a relatively safe area of town. If an officer discovers a bullet during a frisk lawful under
 
 Terry
 
 , the officer is entitled to seize the bullet as it is an instrument of assault in all circumstances.
 

 One of the reasons we do not look to the surrounding circumstances in cases concerning the weapons listed in
 
 Terry
 
 is that, aside from removing the object, no precaution can eliminate the danger. For instance, the Supreme Court has rejected the argument that a suspect who is effectively under the control of the officers cannot gain access to weapons located nearby.
 
 Michigan v. Long
 
 ,
 
 463 U.S. 1032
 
 , 1051,
 
 103 S.Ct. 3469
 
 ,
 
 77 L.Ed.2d 1201
 
 (1983) ;
 
 see also
 

 United States v. Sanders
 
 ,
 
 994 F.2d 200
 
 , 209-10 (5th Cir. 1993) (rejecting the argument that "by handcuffing a suspect, the police instantly and completely eliminate all risks that the suspect will ... do them harm."). Further, even the presence of multiple officers does not eliminate, though it may reduce, the risk that a suspect will obtain a gun and fire it at the officer.
 

 Moreover, a bullet is an instrument of assault because its only purpose is to be used with a firearm. Like a gun, a bullet located during a
 
 Terry
 
 frisk poses an inherent risk to the safety of the officer and others nearby, and the police officer should not be required to assume such "unnecessary risks in the performance of their duties."
 
 Terry
 
 , 392 U.S. at 23,
 
 88 S.Ct. 1868
 
 . For those reasons, having found a bullet pursuant to a
 
 Terry
 
 frisk, an
 officer is permitted to seize it in the same manner as he would a gun.
 

 This is not to say that the Fourth Amendment provides no protection against the unreasonable seizure of a bullet. But those protections come at the initiation of the encounter when the officer must have reasonable suspicion of criminal activity in order to initiate the stop and a reasonable belief that the individual is armed and presently dangerous in order to conduct the pat down.
 

 Id.
 

 at 24, 30
 
 ,
 
 88 S.Ct. 1868
 
 . It is also not to say that the totality of the circumstances has no role in the
 
 Terry
 
 context, of course it does, but that role is limited to the initiation of the stop and frisk. After having made those determinations, an officer is authorized to remove a concealed object that he reasonably believes is a weapon or other instrument of assault based on the pat down. And because a bullet is an instrument of assault in the
 
 Terry
 
 context, it is reasonable under all circumstances for the officer to protect his safety and that of others nearby by removing the bullet.
 

 Because I conclude that a bullet falls in to the category of "guns, knives, clubs, or other hidden instruments for the assault of the police officer,"
 

 id.
 

 at 29
 
 ,
 
 88 S.Ct. 1868
 
 , and cannot logically be separated from a gun for
 
 Terry
 
 purposes, I would find that anytime an officer conducts a lawful
 
 Terry
 
 frisk, the officer may seize any bullet located during the frisk.
 

 Cf., e.g.
 
 ,
 
 Georgia v. Randolph
 
 ,
 
 547 U.S. 103
 
 , 121,
 
 126 S.Ct. 1515
 
 ,
 
 164 L.Ed.2d 208
 
 (2006) ("This is the line we draw, and we think the formalism is justified.");
 
 Atwater v. City of Lago Vista
 
 ,
 
 532 U.S. 318
 
 , 347,
 
 121 S.Ct. 1536
 
 ,
 
 149 L.Ed.2d 549
 
 (2001) ("Often enough, the Fourth Amendment has to be applied on the spur (and in the heat) of the moment, and the object in implementing its command of reasonableness is to draw standards sufficiently clear and simple to be applied with a fair prospect of surviving judicial second-guessing months and years after an arrest or search is made.");
 
 Dunaway v. New York
 
 ,
 
 442 U.S. 200
 
 , 213-14,
 
 99 S.Ct. 2248
 
 ,
 
 60 L.Ed.2d 824
 
 (1979) ("A single, familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.");
 
 United States v. Robinson
 
 ,
 
 414 U.S. 218
 
 , 235,
 
 94 S.Ct. 467
 
 ,
 
 38 L.Ed.2d 427
 
 (1973) ("A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search.").