# United States Court of Appeals
## For the First Circuit

No. 02-1417

BEVERLY CORREIA AND JOHN CARVALHO,

Plaintiffs, Appellants,

v.

KEVIN FITZGERALD, ETC., ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin, Senior Circuit Judge,

and Lipez, Circuit Judge.

Bruce A. Assad for appellants.
Melody A. Alger, with whom Baluch, Gianfrancesco, Mathieu &
Szerlag was on brief, for appellees.

December 31, 2003

**SELYA**, **Circuit Judge**.  The appellants in this tort action profess disappointment with the jury's take-nothing verdict and invite us to order a new trial.  Finding their disappointment understandable but their arguments unpersuasive, we decline the invitation.

## I.

## Background

The facts are straightforward.  On February 5, 1997, plaintiffs-appellants Beverly Correia and John Carvalho were passengers in a car heading eastbound on Route 195 in Seekonk, Massachusetts.  The driver, Russell Machado, was proceeding in the far left-hand lane of a six-lane divided highway.  At the same time and place, defendant-appellee Roderick Davol, Jr., a firefighter, was driving a fire engine owned by the City of East Providence, Rhode Island (the City).  Although Seekonk and East Providence repose in separate states, they are contiguous communities.

Davol was responding to an accident that had occurred in East Providence.  To reach the scene of the accident, he needed to make a U-turn and access the westbound lanes of Route 195.  As he attempted to guide the fire engine through that maneuver, it collided with Machado's vehicle.  The crash occurred in broad daylight.

There is considerable dispute about the etiology of the collision.  According to Davol, the fire truck was traveling in the

-2-

far left-hand lane (in front of Machado's car) with its siren blaring. As he approached an emergency vehicle turnaround in the median strip, he slowed the truck, swung to the right (straddling the far left and center lanes) in order to execute the wide left turn, and activated the directional signal. The appellants tell a different tale. They maintain that the fire engine was fully in the center lane all along and veered to the left without activating either its siren or blinker lights.

The parties agree that Machado's car (which was trying to pass on the left) collided with the fire truck (which was trying to enter the turnaround). Both vehicles were badly damaged and the appellants sustained severe injuries.

Relying on diversity of citizenship and the existence of a controversy in the requisite amount, 28 U.S.C. § 1332(a), the appellants brought suit against the City, the City treasurer (as an "official capacity" defendant), and Davol in the United States District Court for the District of Massachusetts. The City retorted by filing a third-party complaint against Machado for the cost of repairing the fire engine.

For the most part, pretrial proceedings were uneventful. We mention only one aspect. The district court set the case for trial in December of 2001. On November 28, the appellants asked the court to postpone the trial for three months, expressing concern that the jury would be prejudiced in favor of a

-3-

firefighter-defendant due to the publicity surrounding the events of September 11, 2001, and the sentiment engendered by those events.[1]  The district court denied the motion.

As matters turned out, the court subsequently delayed the trial for a few weeks in hopes of achieving a settlement. Negotiations proved fruitless and a five-day trial commenced on January 14, 2002.  The district court submitted a verdict sheet to the jury that incorporated several special interrogatories.  These questions addressed both the appellants' personal injury claims and the City's property damage claim.  In connection with the former, the jury returned a take-nothing verdict.  In connection with the latter, the jury apportioned negligence 99% to Machado and 1% to Davol, and awarded the City $72,801.  The district court entered judgment for the defendants on the take-nothing verdict and for the City on the property damage award (albeit in a modified amount).[2]

---

[1]On September 11, 2001, terrorists struck the United States. One hijacked airliner, then another, crashed into the World Trade Center towers in Manhattan, causing the towers to collapse.  2,752 lives were lost.  As part of the same foray, a third hijacked airliner crashed into the Pentagon, and a fourth — diverted from its nefarious mission by a brave group of passengers — went down near Pittsburgh, Pennsylvania, killing all who were aboard.  In the aftermath, so-called first responders, particularly New York City police officers and firefighters, performed valiantly to prevent even greater carnage.

[2]The court reduced the property damage award by 1% to account for Davol's negligence and by an additional $25,000 to account for an earlier payment.  Neither Machado nor the City has appealed that judgment.

The appellants filed a timely motion for a new trial. The take-nothing verdict, they said, confirmed their fears about the ripple effect of the September 11 tragedy, contravened both the law and the weight of the evidence, and highlighted an irreconcilable inconsistency in the jury's answers to the special questions. The district court rebuffed this asseverational array in a thoughtful rescript. See Carvalho v. Fitzgerald, 188 F. Supp. 2d 132 (D. Mass. 2002). This appeal followed.

## II.

## Analysis

In this venue, the appellants assign error to (i) the lower court's denial of their motion for a continuance, and (ii) the court's denial of their motion for a new trial. We address these claims sequentially.

## A.

## Denial of the Continuance

The appellants argue that the widespread publicity about the cataclysmic events of September 11 and the consequent outpouring of emotion negated the jury's ability to render an impartial verdict (and that, therefore, the district court blundered in failing to postpone the trial). We review a district court's denial of a motion to continue for abuse of discretion. Macaulay v. Anas, 321 F.3d 45, 48 (1st Cir. 2003). This makes sense because even the most scrupulous study of an algid appellate

-5-

record cannot put the reader on an equal footing with the trial judge, who has gained first-hand knowledge of the nuances of a particular case. Given this deferential standard of review, we will not deem the denial of a continuance erroneous unless our canvass of the record indicates that "the trial court indulged a serious error of law or suffered a meaningful lapse of judgment, resulting in substantial prejudice to the movant." United States v. Saccoccia, 58 F.3d 754, 770 (1st Cir. 1995).

Here, the appellants' core contention is that the district court grossly underestimated the prejudicial effects of the shock waves surrounding the September 11 tragedy. The lower court rejected this contention both before trial and in its post-verdict opinion. On the later occasion, it explained that the jury "most likely shared in the respect that fire fighters have earned from those for whom they risk their lives," but that the appellants nonetheless received a fair trial. Carvalho, 188 F. Supp. 2d at 135 & n.4.

We note at the outset that the appellants' argument is an unusual one. Typically, a motion for a continuance on the ground of pretrial publicity involves publicity directly related to the litigants or the matters at issue in the litigation. See, e.g., United States v. Moreno Morales, 815 F.2d 725, 730 (1st Cir. 1987); Delaney v. United States, 199 F.2d 107, 110-13 (1st Cir. 1952). Here, however, the allegedly prejudicial publicity is exogenous in

the sense that it bears no direct connection to either the litigants or the litigation. While publicity of this sort occasionally may necessitate postponement of a trial, we suspect that such occasions will be rare.

In all events, the appellants' argument depends upon the notion that the events of September 11 so exalted first responders that, for many months thereafter, no one who sat across a courtroom from a police officer or a firefighter could get a fair shake. We think that argument underestimates a trial court's ability to cope with public sentiment. The best way to ensure that jurors do not harbor biases for or against the parties is for the trial court to conduct a thorough voir dire examination. See Patton v. Yount, 467 U.S. 1025, 1038 & n.13 (1984) ("[V]oir dire has long been recognized as an effective method of rooting out such [publicity-based] bias, especially when conducted in a careful and thoroughgoing manner.") (citation and internal quotation marks omitted). Assuming that venirepersons pass through this screen, the trial court thereafter may operate on the presumption that the chosen jurors will obey the judge's instructions to put extraneous matters aside and decide each case on its merits. See Richardson v. Marsh, 481 U.S. 200, 206 (1987); Blake v. Pellegrino, 329 F.3d 43, 50 (1st Cir. 2003). While the presumption that jurors follow the court's instructions is rebuttable, rebutting it takes more than empty rhetoric.

-7-

In this case, the appellants have wholly failed to rebut the presumption. To warrant a continuance on the ground of potential jury contamination, the appellants had to do more than show that the jurors were exposed to pervasive (and potentially influential) news accounts. They had to carry the added burden of demonstrating that the exposure was likely to result in unfair prejudice. United States v. Orlando-Figueroa, 229 F.3d 33, 43 (1st Cir. 2000); Moreno Morales, 815 F.2d at 733-34. The requisite prejudice can be shown either directly (say, by proof of actual bias among the seated jurors) or indirectly (say, by inferences arising out of circumstantial evidence). See Moreno Morales, 815 F.3d at 731, 734-35.

The appellants have not shown any cognizable prejudice here. The district court conducted a thorough voir dire. It queried all the potential jurors about their biases vis-à-vis firefighters and excused the one juror who expressed such a bias (the juror in question had a son who was a firefighter). The appellants' counsel neither sought to have the court augment its inquiry nor suggested any other questions that might usefully be posed. The questioning did not reveal anything even remotely indicating actual bias on the part of any seated juror.

By like token, the circumstantial evidence falls far short of what would be needed to raise a presumption of prejudice. The fact that only one member of the venire had to be excused

because of a pro-firefighter bias is itself telling.  See Murphy v. Florida, 421 U.S. 794, 803 (1975).  And to cinch matters, the district court instructed the jurors, both at the commencement of the trial and in the charge, to decide the case based strictly and solely on the evidence.  The court's language was firm and pointed. There is nothing in the record before us that casts doubt upon the presumption that the jurors followed these instructions.

The short of it is that the district court handled this issue with great sensitivity.  The careful voir dire examination, the clear instructions, and the absence of any evidentiary basis for a finding of prejudice speak volumes.  Those features impel us to hold that the court acted well within the realm of its discretion in denying the requested continuance.  Cf. United States v. Capelton, ___ F.3d ___, ___ (1st Cir. 2003) [No. 02-1248, slip op. at 7-8] (rejecting defendants' claim that jury could not dispassionately evaluate police testimony and upholding denial of mistrial motion in trial commenced prior to the events of September 11 and concluded thereafter).

## B.

## Denial of a New Trial

We turn now to the appellants' motion for a new trial. That motion implored the lower court to nullify the verdict as (i) contrary to law, (ii) against the weight of the evidence, and (iii) based upon irreconcilably inconsistent answers to the special

questions that were incorporated into the verdict sheet.  The district court rejected these importunings, and so do we.

We pause first to make a procedural point.  The parties have briefed this case as if state law (here, the law of Massachusetts) describes the appropriate standard for granting a new trial in a diversity action, and the district court acquiesced in this view.  <u>See</u> <u>Carvalho</u>, 188 F. Supp. 2d at 134 (citing <u>Turnpike Motors, Inc.</u> v. <u>Newbury Group, Inc.</u>, 596 N.E.2d 989, 994 (Mass. 1992)).  We do not agree.

Federal courts sitting in diversity apply state substantive law and federal procedural rules.  <u>Hanna</u> v. <u>Plumer</u>, 380 U.S. 460, 465 (1965); <u>Dichner</u> v. <u>Liberty Travel</u>, 141 F.3d 24, 32 (1st Cir. 1998).  Classifying a particular matter as substantive or procedural can sometimes be a challenging endeavor.  <u>See</u>, <u>e.g.</u>, <u>Hanna</u>, 380 U.S. at 463-74; <u>Guaranty Trust Co.</u> v. <u>York</u>, 326 U.S. 99, 104-12 (1945).  But classification is generally a straightforward exercise when a Federal Rule of Civil Procedure covers the point.  <u>See</u> <u>Gasperini</u> v. <u>Ctr. for Humanities, Inc.</u>, 518 U.S. 415, 427 n.7 (1996); <u>Burlington N. R. Co.</u> v. <u>Woods</u>, 480 U.S. 1, 4-5 (1987).

This is such a case.  The granting or denial of a motion for a new trial is a procedural matter governed by a directly applicable federal rule: Fed. R. Civ. P. 59(a).  <u>See</u> 11 Charles A. Wright et al., Federal Practice & Procedure § 2802, at 42 (2d ed. 1995 & Supp. 2003); 12 James Wm. Moore et al., Moore's Federal

Practice § 59.03, at 59-12 (3d. ed. 2003). We consistently have looked to federal law for the standard for deciding new trial motions in diversity cases, see, e.g., Quinones-Pacheco v. Am. Airlines, Inc., 979 F.2d 1, 3-4 (1st Cir. 1992); Putnam Res. v. Pateman, 958 F.2d 448, 459 (1st Cir. 1992), and state practice generally has no place in that endeavor.[3]

We deem it worthwhile to clarify this procedural point even though it has no practical implications here. When a trial court applies an incorrect legal standard to a motion for a new trial, one possible course of action is to remand for reconsideration. See, e.g., Wagner v. Fair Acres Geriatric Ctr., 49 F.3d 1002, 1019 (3d Cir. 1995). That course is unnecessary in this case because the federal and Massachusetts standards for granting or denying a new trial are identical in all relevant respects. Compare, e.g., Wagenmann v. Adams, 829 F.2d 196, 200-01 (1st Cir. 1987), with, e.g., Turnpike Motors, 596 N.E.2d at 994. We therefore proceed with our assessment of the district court's decision.

Our starting point is the standard of review. We will overturn the denial of a motion for a new trial only for abuse of discretion. Milone v. Moceri Family, Inc., 847 F.2d 35, 37 (1st

---

[3]We say "generally" because exceptions may apply in special circumstances. See, e.g. Gasperini, 518 U.S. at 426-31 (holding that a federal trial court sitting in diversity should use the applicable state standard in reviewing allegedly excessive damage awards). Here, however, no such special circumstances exist.

Cir. 1988); Hubbard v. Faros Fisheries, Inc., 626 F.2d 196, 200 (1st Cir. 1980). A mistake of law is, of course, tantamount to an abuse of discretion. Rosario-Urdaz v. Rivera-Hernandez, ___ F.3d ___, ___ (1st Cir. 2003) [No. 02-2593, slip op. at 5].

The appellants' initial argument is that the jury verdict flouts the applicable law. This is a somewhat convoluted argument and must be placed into workable perspective.

The jury's take-nothing verdict was underpinned by its answers to special questions. In response to Question No. 1, the jury declared that Davol had been "negligent while turning his fire truck into the [Route 195] crossover." In response to Question No. 2, it declared that Davol's negligence was not "a substantial or proximate cause of [the appellants'] injur[ies] and damages." The appellants concede that negligence was an open question appropriate for jury consideration. They argue, however, that once the jurors found Davol negligent, they were legally obliged to find that his negligence proximately caused their injuries and damages.

The appellants cobble together this theory out of a series of stipulations entered into among the parties in connection with the authentication and admissibility of various medical bills and reports. The operative language of each stipulation identified the bills and reports as relating to treatment for "injuries sustained as a result of the motor vehicle accident of February 5, 1997." The appellants construe this language as a legally binding

-12-

admission of proximate cause.  This interpretation elevates hope over reason.

Determinations as to a stipulation's meaning and legal effect are determinations of law, and, thus, engender de novo review.  Gómez v. Rivera Rodríguez, 344 F.3d 103, 121 (1st Cir. 2003).  Courts should construe stipulations in accordance with accepted principles of general contract law.  Id.  Context can be — and often is — of decretory significance.  See, e.g., id.; Newport Plaza Assocs. v. Durfee Attleboro Bank (In re Newport Plaza Assocs.), 985 F.2d 640, 646 (1st Cir. 1993).

In this instance, the trial court read the stipulations as falling well short of an admission of proximate cause and charged the jurors that causation was for them to determine.  This was undeniably correct.  Fairly read, the stipulations conceded that the appellants had suffered injuries in the collision and had incurred reasonable hospital and medical expenses in an effort to cure and relieve those injuries.  The stipulations also admitted that the injuries and damages flowed from the crash — but not that anyone's negligence caused the accident.  Because nothing in the stipulations even remotely approaches a concession of causation vis-à-vis the occurrence of the accident, the stipulations supply no basis for overturning the verdict.

The appellants next contend that the jury's answer to Question No. 2 was against the weight of the evidence.  They hammer

the version of the accident that they espoused to the jury and note that their accident reconstructionist, one McNally, opined that Davol's turning maneuver was the primary cause of the collision. They also excoriate the district court's rejection of their claim.

This line of argument does not hold water. A party challenging a trial court's determination that a verdict did not contradict the weight of the evidence faces a steep uphill climb. The challenger must show that the evidence so far preponderates against the verdict that upholding it will perpetuate a manifest miscarriage of justice. Putnam Res., 958 F.2d at 459; Wagenmann, 829 F.2d at 200-01.

The appellants' effort to carry this burden fails: their brief does not present a balanced view of the facts, but, rather, insupportably discounts (and, to some extent, blithely overlooks) the evidence favorable to the verdict. Taken as a whole, the proof in this case was not one-sided. It could well have led rational minds to differ as to the issue of causation. See Carvalho, 188 F. Supp. 2d at 134-35 (highlighting permissible inferences from the evidence that supported the jury verdict).

If more were needed — and we doubt that it is — the appellants' argument succumbs to the law of the case. The lower court's instructions laid out the ground rules. The court told the jurors, without objection, that returning a verdict for the appellants required them to find not only that Davol breached an

-14-

actionable duty (i.e., that he was negligent) but also that this negligence was a proximate cause of the accident. The court's instructions included the following explanation:

> "Proximate cause" is defined as any cause which in a natural and continuous sequence, unburdened by any intervening cause, produces the injury complained of and without which the injurious result would not have occurred. In plainer English, a defendant's negligent conduct is the proximate cause of harm to another if his conduct is a <u>substantial factor</u> in bringing about that harm. (Emphasis supplied.)

Question No. 2 reflected the substance of this instruction: "Was Fireman Davol's negligence a substantial or proximate cause of injur[ies] and damages to [the appellants]?"

Both the instruction and the question jibe with substantive principles of Massachusetts law. <u>See</u>, <u>e.g.</u>, <u>Jorgensen</u> v. <u>Mass. Port Auth.</u>, 905 F.2d 515, 524 (1st Cir. 1990) (noting that causation under Massachusetts negligence law requires a showing that the defendant's conduct was a "substantial . . . factor" in bringing about the alleged harm); <u>Tritsch</u> v. <u>Boston Edison Co.</u>, 293 N.E.2d 264, 267 (Mass. 1973) (same). Moreover, the appellants did not object either to the instruction or to the form of Question No. 2. In the absence of a contemporaneous objection, the instruction became the law of the case. <u>See</u> <u>Milone</u>, 847 F.2d at 38-39.

That dooms the appellants' argument. Given the law of the case and the totality of the proof, we cannot say that the finding of "no substantial cause" worked a miscarriage of justice.

-15-

On this chiaroscuro record, the jury supportably could have found that Davol was driving in the far left-hand lane of Route 195 eastbound with his siren blaring; that he eased the fire truck partially into the center lane as a prelude to a left-hand turn; that he activated his left directional signal; and that Machado caused the collision by recklessly attempting to pass. A rational jury might well have concluded — as this jury apparently did — that Davol was guilty of some slight negligence (say, moving toward the center lane without signaling) but that, in the overall scheme of things, his conduct did not proximately cause the collision.

We have said before that causation questions "are normally grist for the jury's mill." Peckham v. Cont'l Cas. Ins. Co., 895 F.2d 830, 837 (1st Cir. 1990). This case illustrates the point. It is the jury's task, not ours or the trial court's, to resolve conflicts in the testimony. See id. at 839 (holding that this court "cannot reject possibilities rooted in the record merely because, if sitting as factfinders, we would likely have drawn a different set of conclusions").

The appellants have one last arrow in their quiver. They insist that certain of the jury's answers to the special questions were irreconcilably inconsistent. This claim requires an understanding of a further question posed by the court to the jury.

In the course of resolving the City's third-party complaint (its property damage suit against Machado), Question No.

-16-

7 asked the jurors to apportion negligence between Davol and Machado.  See Mass. Gen. Laws ch. 231, § 85.  In response, the jurors found Davol 1% negligent and Machado 99% negligent.  The appellants posit that this answer (in particular, the finding that Davol was 1% negligent) is fatally inconsistent with the jurors' response to Question No. 2 (in which they determined that Davol's conduct was not a substantial cause of the appellants' damages).

This argument is hopeless.  To begin with, it has been forfeited.  The special questions here were propounded pursuant to Fed. R. Civ. P. 49(b).[4]  When the verdict was returned, the appellants did not raise a claim of inconsistency before the court discharged the jury.  In that situation, failure to object to an alleged inconsistency while the jury is still in the box forfeits a party's objection, subject only to the possibility of relief for

---

[4]The rule empowers the district court to "submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict."  Fed. R. Civ. P. 49(b).  If the court elects to use this methodology, it is obliged to "give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict."  Id.  In the event that "the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict . . . the court shall return the jury for further consideration of its answers and verdict or shall order a new trial."  Id.  We have placed a gloss on this last proviso, requiring the parties, on pain of forfeiture, to call any such alleged inconsistency to the trial court's attention as soon as the verdict is returned.  See, e.g., Peckham, 895 F.2d at 836; McIsaac v. Didriksen Fishing Corp., 809 F.2d 129, 134 (1st Cir. 1987).

plain error.  See Peckham, 895 F.2d at 836; McIsaac v. Didriksen Fishing Corp., 809 F.2d 129, 134 (1st Cir. 1987).

We need not explore the parameters of plain error review because no less an authority than the Supreme Court has instructed that "[w]here there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way."  Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364 (1962).  Here, one easily can conceive of theories that harmonize the jury's answer to Question No. 7 with its answer to Question No. 2.  For example, the jury may have thought Davol's 1% negligence insubstantial and — consistent with the law of the case — insufficient to support a finding of proximate cause.

To recapitulate, each of the appellants' arguments in support of their new trial motion lacks merit.  We conclude, therefore, that the district court acted appropriately in denying the motion.

## III.

## Conclusion

We need go no further.  For the reasons elucidated above, we uphold both the lower court's denial of a continuance and its refusal to grant a new trial.

**Affirmed**.

-18-