# United States Court of Appeals
## For the First Circuit

No. 19-1053

DANIELSON MENDES GONCALVES PONTES,

Petitioner,

v.

WILLIAM P. BARR,
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Selya, and Kayatta,
<u>Circuit Judges</u>.

<u>Jerome P. Mayer-Cantu</u>, with whom <u>Philip L. Torrey</u> and <u>Crimmigration Clinic</u>, Harvard Law School, were on brief, for petitioner.
<u>Kari Hong</u>, Ninth Circuit Appellate Program, Boston College Law School, on brief for Retired Immigration Judges et al., amici curiae.
<u>Lindsay Corliss</u>, Trial Attorney, Office of Immigration Litigation, U.S. Department of Justice, with whom <u>Joseph H. Hunt</u>, Assistant Attorney General, Civil Division, <u>Daniel E. Goldman</u> and <u>Brianne Whelan Cohen</u>, Senior Litigation Counsels, Office of Immigration Litigation, were on brief, for respondent.

September 6, 2019

**SELYA**, **Circuit Judge**.  The petitioner, Danielson Mendes Goncalves Pontes, is a Cape Verdean national.  He seeks judicial review of a final order of the Board of Immigration Appeals (BIA) ordering him removed to his homeland and denying his motions to terminate removal proceedings.  Addressing a challenge to the manner in which immigration courts obtain jurisdiction over removal proceedings — a challenge that has potentially broad implications and that hinges on a question of first impression in this circuit — we conclude that the Supreme Court's decision in Pereira v. Sessions, 138 S. Ct. 2105 (2018), did not invalidate the Notice to Appear (NTA) that served as the charging document in the petitioner's removal proceedings.  Based on this conclusion, we hold that the petitioner's motions to terminate his removal proceedings were properly denied and that the BIA's final order of removal was in accordance with law.  Accordingly, we deny the petition for judicial review.

## I. BACKGROUND

The petitioner was admitted to the United States and became a lawful permanent resident on March 2, 2010.  On December 20, 2013, he was convicted in a Massachusetts court of violating a protective order.  See Mass. Gen. Laws ch. 209A, § 7.  In September 2017, federal authorities served him with an NTA, which informed him that he was being charged with removability based on the protective-order conviction, see 8 U.S.C. § 1227(a)(2)(E)(ii),

- 2 -

and directed him to appear in the immigration court in Boston on an unspecified future date.

In January of 2018, the petitioner was taken into custody by Immigration and Customs Enforcement agents and detained at a Massachusetts correctional facility. The following month, he was served with a notice of hearing, which directed him to appear in the Boston immigration court on February 22, 2018, at 1:00 p.m. The petitioner participated in that hearing remotely from the correctional facility, and the proceedings were continued on March 1. At the March hearing, the petitioner submitted written pleadings admitting the factual allegations of the NTA, conceding removability as charged, and indicating his intention to apply for relief from removal. Although the petitioner initially signaled that he would seek cancellation of removal, see id. § 1229b, he subsequently abandoned that avenue and sought only adjustment of status, see id. § 1255, with a request in the alternative for voluntary departure.

After a two-day hearing in July of 2018, the immigration judge (IJ) denied the petitioner's application for relief (including his request for voluntary departure) and ordered him removed to Cape Verde. The IJ assumed, arguendo, that the petitioner had satisfied the statutory eligibility requirements for adjustment of status, see id. § 1255(i)(2), but found that "significant adverse factors . . . weigh[ed] heavily against a

discretionary grant of adjustment of status." This compendium of adverse factors included restraining orders filed against him by several women as a result of violent or threatening behavior.

The petitioner appealed to the BIA. While his appeal was pending, the petitioner filed two alternative motions seeking either to terminate removal proceedings or to remand to the immigration court. In these motions, he contended that — under Pereira, which the Supreme Court had decided some weeks before his July hearing — his NTA was ineffective as a charging document because it failed to include the date and time of the contemplated removal hearing. Consequently, he posited, the immigration court lacked jurisdiction over his case and the removal order was a nullity.

On December 28, 2018, the BIA dismissed the petitioner's appeal, adopting and affirming the IJ's decision. Denying the petitioner's motions to terminate the proceedings or to remand, the BIA determined that Pereira did not undermine the immigration court's jurisdiction. In support, the BIA noted that it had rejected essentially the same argument in an earlier case. See In re Bermudez-Cota, 27 I. & N. Dec. 441 (BIA 2018).

This timely petition for judicial review followed. See 8 U.S.C. § 1252.

- 4 -

## II. ANALYSIS

In this venue, the petitioner challenges only the BIA's denial of his motions to terminate the proceedings. As framed, his challenge rests on a purely legal question, and we review the BIA's answers to questions of law de novo, "with some deference to the agency's expertise in interpreting both the statutes that govern its operations and its own implementing regulations." Cabrera v. Lynch, 805 F.3d 391, 393 (1st Cir. 2015). Nevertheless, "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837, 842-43 (1984).

Here, the NTA used to commence the petitioner's removal proceedings was issued pursuant to regulations promulgated by the Attorney General specifically to govern the commencement of removal proceedings under the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1101-1537. In relevant part, these regulations provide that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." 8 C.F.R. § 1003.14(a). The term "charging document," in turn, is defined to include "a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien." Id. § 1003.13.

The regulations also specify what information must be contained in an NTA, such as the nature of the proceedings against the alien, the legal authority for the proceedings, and the charges brought. See id. § 1003.15. Of particular pertinence for present purposes, the regulations state that an NTA need only provide the time and place of the initial hearing "where practicable." Id. § 1003.18(b).

The petitioner targets these regulations, arguing that they do not control the substantive requirements of an NTA. In his view, Congress delineated those requirements in the INA itself, see 8 U.S.C. § 1229(a), and the statute trumps the regulations. This is critically important because, even though the substantive requirements of section 1229(a) largely mirror those limned in the regulations, there is at least one significant difference. Section 1229(a) states that the time and place of the removal hearing must be specified in the notice, see id. § 1229(a)(1)(G)(i), but it omits the qualifier that this must be done only "where practicable." Analyzing this statutory provision in Pereira, the Supreme Court held that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a).'" 138 S. Ct. at 2113-14.

The petitioner seizes upon this holding. He asserts that because the NTA that initiated the removal proceedings against

him did not include the date and time of his contemplated hearing, it was defective as a charging document and, thus, was ineffectual to commence removal proceedings. As a result, the petitioner says, the immigration court never acquired jurisdiction over his removal proceedings, and the agency's final order of removal is a nullity.

Refined to bare essence, the petitioner challenges the Attorney General's authority to promulgate regulations governing removal proceedings that contain substantive requirements for an NTA different from those contained in section 1229(a). Given the holding in Pereira, this challenge has a patina of plausibility — but that patina dissolves upon further scrutiny.

We begin by acknowledging that Congress has granted the Attorney General broad powers to "establish such regulations . . . as the Attorney General determines to be necessary" for implementation of the INA. 8 U.S.C. § 1103(g)(2). Of course, that authority — though broad — may not be exercised "in a manner that is inconsistent with the administrative structure that Congress enacted into law." FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 125 (2000) (quoting ETSI Pipeline Project v. Missouri, 484 U.S. 495, 517 (1988)). Thus, the efficacy of the petitioner's challenge necessarily depends on whether Congress has spoken unambiguously to this issue or, conversely, whether it has left some room in which the Attorney General is entitled to

exercise his discretion.  See Smith v. Berryhill, 139 S. Ct. 1765, 1778 (2019); Chevron, 467 U.S. at 843-44.

With respect to removal proceedings, Congress has spoken to the substantive requirements of an NTA only in section 1229(a). This provision states in pertinent part that "[i]n removal proceedings under section 1229a . . . , written notice (in this section referred to as a 'notice to appear') shall be given . . . to the alien."  8 U.S.C. § 1229(a)(1).  It then provides that such a notice must specify, inter alia, "[t]he time and place at which the proceedings will be held."  Id. § 1229(a)(1)(G)(i).

In Pereira, 138 S. Ct. at 2110, the Supreme Court assessed section 1229(a) as it relates to the stop-time rule, see 8 U.S.C. § 1229b(d)(1), which governs the length of an alien's continuous physical presence in the United States for the purpose of an application for cancellation of removal.  By its terms, the stop-time rule applies once "the alien is served a notice to appear under section 1229(a)."  Id.  Reading "the plain text of the statute," the Pereira Court found congressional intent unambiguous as to the "time and place" requirements of section 1229(a).  138 S. Ct. at 2114.  The Court then held that section 1229b(d)(1) — the stop-time rule — imports those same requirements.  See id.

The petitioner's removal proceedings, though, were not instituted under section 1229(a).  The question before us, then, is whether the requirements that section 1229(a) establishes for

- 8 -

NTAs pertain to the commencement of removal proceedings generally. The petitioner invites us to hold that "under Pereira, the phrase 'notice to appear' means the same thing throughout the [INA]" and, therefore, the "time and place" requirements of section 1229(a) override any regulation issued by the Attorney General in implementing the INA. For the reasons explained below, we decline the petitioner's invitation. In reaching this result, we answer a question of first impression in this circuit. But we do not break new ground: rather, we join a number of courts of appeals that have rejected similar arguments. See Pierre-Paul v. Barr, 930 F.3d 684, 689-90 (5th Cir. 2019); United States v. Cortez, 930 F.3d 350, 363 (4th Cir. 2019), as amended (July 19, 2019); Nkomo v. Att'y Gen., 930 F.3d 129, 133 (3d Cir. 2019); Ali v. Barr, 924 F.3d 983, 986 (8th Cir. 2019); Banegas Gomez v. Barr, 922 F.3d 101, 110 (2d Cir. 2019); Soriano-Mendosa v. Barr, 768 F. App'x 796, 802 (10th Cir. 2019); Karingithi v. Whitaker, 913 F.3d 1158, 1160 (9th Cir. 2019); Hernandez-Perez v. Whitaker, 911 F.3d 305, 314-15 (6th Cir. 2018).

To begin, the Pereira Court repeatedly emphasized the isthmian nature of its holding, making pellucid that it addressed only the "narrow question" before it: "If the Government serves a noncitizen with a document that is labeled 'notice to appear,' but the document fails to specify either the time or place of the removal proceedings, does it trigger the stop-time rule?" 138 S.

- 9 -

Ct. at 2110. And in concluding that such a document does not animate the stop-time rule, the Court zeroed in on circumstances specific to that rule.

For instance, the Court's reasoning rested in material part on the stop-time rule's explicit reference to a notice to appear "under section 1229(a)." See id. at 2117. Because the stop-time rule did not otherwise set forth its own definition of a notice to appear, the Court applied the "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." Id. at 2115 (quoting Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 571 (2012)). Similarly, the Court leaned on the specific purpose of the stop-time rule in interpreting that rule's reference to a notice to appear. See id.

We honor both the letter of the narrow holding in Pereira and the spirit behind it in refusing to extend the Court's reasoning to contexts other than those explicitly contemplated in that decision. We add, moreover, that the extensive implications of the petitioner's argument do not align with a narrow reading of Pereira. Were we to adopt the petitioner's argument, the upshot would be that every removal proceeding previously commenced by an NTA devoid of time and place information would be vulnerable to a post hoc challenge.

We do not think that the Pereira Court meant to conceal so significant a shifting of the tectonic plates within the curtilage of its answer to the confined question that it addressed.[1] Under Pereira, then, the challenged regulations may conflict with congressional intent (and therefore lack force) only if they are somehow tied to the "time and place" requirements that Congress delineated in section 1229(a) concerning written notice to an alien. We turn to that inquiry.

We conclude that, in promulgating the challenged regulations, the Attorney General has not strayed into forbidden terrain. Unlike the stop-time rule, the regulations contain no explicit reference to section 1229(a), see Hernandez-Perez, 911 F.3d at 313, and they are not "textually glued" to that provision, Pierre-Paul, 930 F.3d at 690. Moreover, they contain their own specification of the substantive requirements that an NTA must satisfy, rendering inapposite the "normal rule of statutory construction" upon which the Pereira Court relied in interpreting the stop-time rule. See Karingithi, 913 F.3d at 1160.

Perhaps more importantly, the regulations do not concern the written notice contemplated in section 1229(a). Section

---

[1] Indeed, if the petitioner's argument were correct, then the immigration court would not have acquired jurisdiction over Pereira's removal proceedings and the Supreme Court would have had at hand a ready means for disposing of the case without pausing to delve into the intricacies of the stop-time rule.

1229(a) governs the information that must be provided to aliens, that is, "the 'time' and 'place,' that would enable them 'to appear' at the removal hearing in the first place." Pereira, 138 S. Ct. at 2115. After all, without that information, "the Government cannot reasonably expect the noncitizen to appear for his removal proceedings." Id.

The regulations are not concerned with the information that is provided to an alien. Instead, they set forth the process by which the immigration court obtains jurisdiction over a removal proceeding. See 8 C.F.R. § 1003.14. The procedure established by these regulations "'marks an agency internal boundary' that gives the immigration courts, rather than [some other subset of the agency], 'control over the docketing of cases.'" Cortez, 930 F.3d at 361-62 (citation omitted) (quoting United States v. Arroyo, 356 F. Supp. 3d 619, 627-28 (W.D. Tex. 2018)). It follows, we think, that the challenged regulations and section 1229(a) speak to different audiences. On the one hand, the regulations deal with the commencement of proceedings in the immigration court. The statute, on the other hand, deals with notice to aliens of removal hearings. See id. at 366; Karingithi, 913 F.3d at 1160. As to the former, section 1229(a) says nothing about the rules of procedure that govern case docketing, see Karingithi, 913 F.3d at 1160, so the Attorney General was "free to fashion [his] own rules of procedure" in this regard, Hernandez-Perez, 911 F.3d at 313

- 12 -

(quoting Vt. Yankee Nuclear Power Corp. v. NRDC, 435 U.S. 519, 543 (1978)).

To cinch the matter, the challenged regulations do not simultaneously operate to implement section 1229(a). After all, a "Notice to Appear" is referenced in 8 C.F.R. § 1003.13 as one among three examples in a non-exhaustive list defining a "charging document" for the purposes of 8 C.F.R. § 1003.14. Under the regulations, then, the filing of a charging document such as a Notice of Referral to Immigration Judge may establish the immigration court's jurisdiction over a case, commencing removal proceedings against an alien without resort to a Notice to Appear.

That ends this aspect of the matter. For these reasons we hold that the challenged regulations are not in conflict either with section 1229(a) or with the Court's decision in Pereira. Relatedly, we hold that the Attorney General acted within the proper ambit of his statutory authority in formulating distinct substantive requirements applicable to NTAs for purposes of those regulations. To be sure, there is "some common-sense discomfort in adopting the position that a single document labeled 'Notice to Appear' must comply with a certain set of requirements for some purposes, like triggering the stop-time rule, but with a different set of requirements for others, like vesting jurisdiction with the immigration court." Hernandez-Perez, 911 F.3d at 314. But as we have pointed out in a different context, "words are like

chameleons; they frequently have different shades of meaning depending upon the circumstances." United States v. Romain, 393 F.3d 63, 74 (1st Cir. 2004). And in all events, we do not ask whether the Attorney General has chosen either the wisest or the least convoluted course in implementing the INA but, rather, whether he acted within the scope of his authority. We conclude that he has.

We add a coda. The BIA has likewise concluded that an NTA that is served without specification of the time and place of the initial hearing may be sufficient to confer subject-matter jurisdiction on an immigration court in removal proceedings. See Bermudez-Cota, 27 I. & N. Dec. at 447. In addition, the BIA has clarified its view that such a notice "vests an Immigration Judge with jurisdiction over the removal proceedings" when a notice of hearing is sent to the alien in advance of those proceedings. Id.[2] As this interpretation is neither "obviously erroneous or

---

[2] Bermudez-Cota also purported to resolve the question of whether a two-step process could satisfy section 1229(a), concluding that it could. See 27 I. & N. Dec. at 447. We do not reach this question, but we note that there has been some disagreement among the courts of appeals as to whether the plain text of section 1229(a), as interpreted in Pereira, permits such a conclusion. Compare Perez-Sanchez v. U.S. Att'y Gen., ___ F.3d ___, ___ (11th Cir. 2019) [No. 18-12578, slip. op. at 11] (finding that Pereira "foreclosed" Bermudez-Cota's conclusion that "an NTA under section 1229(a) is not deficient so long as a subsequent notice of hearing is later sent and specifies the time and location of the removal hearing"), with Pierre-Paul, 930 F.3d at 691 (endorsing the two-step process).

inconsistent with the language of the regulation," we see no reason to depart from the general rule that "an agency's interpretation of its own regulations is entitled to great deference." Sidell v. Comm'r, 225 F.3d 103, 109 (1st Cir. 2000). It follows that because the petitioner's NTA complied with the regulations as reasonably interpreted by the BIA, it was effective to confer jurisdiction upon the immigration court.[3]

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we hold that the petitioner's motions to terminate his removal proceedings were properly denied and that the BIA's final order of removal was in accordance with law. Hence, the petition for judicial review is

**Denied.**

---

[3] Because we hold that the NTA in this case was not defective under the regulations, we do not address a question taken up by several of our sister circuits — whether agency regulations can govern the subject-matter jurisdiction of an immigration court without statutory authority or whether such regulations instead must be understood as claim-processing rules. See, e.g., Perez-Sanchez v. U.S. Att'y Gen., ___ F.3d ___, ___ (11th Cir. 2019) [No. 18-12578, slip op. at 18]; Cortez, 930 F.3d at 359-62; Pierre-Paul, 930 F.3d at 691-93; Ortiz-Santiago v. Barr, 924 F.3d 956, 963-64 (7th Cir. 2019), reh'g denied (July 18, 2019).