# United States Court of Appeals
## For the First Circuit

Nos. 18-1834
     19-1250

SELVIN OVIDIO AREVALO,

Petitioner,

v.

WILLIAM P. BARR,
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITIONS FOR REVIEW OF ORDERS OF
THE BOARD OF IMMIGRATION APPEALS

Before

Kayatta, Selya, and Stahl,
Circuit Judges.

David C. Bennion, with whom Free Migration Project was on brief, for petitioner.
Lindsay Corliss, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, with whom Joseph H. Hunt, Assistant Attorney General, John S. Hogan, Assistant Director, Office of Immigration Litigation, Daniel E. Goldman, Senior Litigation Counsel, Office of Immigration Litigation, and Andrea N. Gevas, Trial Attorney, Office of Immigration Litigation, were on brief, for respondent.

February 14, 2020

**SELYA**, **Circuit Judge**.  In its present posture, this case turns largely on the meaning of the word "recalendar," as that word is used in the immigration context.  Here, the parties supplied no particularized meaning for the word when they used it in the pertinent pleadings.  Because the word is not specifically defined either in any applicable statutory provision or in any relevant regulation, we give "recalendar" its plain and natural meaning.  The Board of Immigration Appeals (BIA) interpreted the word correctly and applied it faithfully.  Accordingly, we uphold the challenged orders and deny the two petitions for judicial review.

The petitioner, Selvin Ovidio Arevalo, is a Guatemalan national.  He entered the United States in 2000 at age fourteen without documentation.  The government initiated removal proceedings against the petitioner in 2010, charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i), (a)(7)(A)(i)(I).

The petitioner conceded removability but cross-applied for asylum and withholding of removal, claiming persecution on account of both political opinion and membership in a particular social group. See 8 U.S.C. §§ 1158(b)(1), 1231(b)(3)(A).  At the same time, he sought protection under the United Nations Convention Against Torture (CAT).  All of his claims were based on his concerns about violent gang recruitment of young, apparently wealthy adults in Guatemala.

After a hearing, an immigration judge (IJ) denied the petitioner's claim for asylum as untimely, see id. § 1158(a)(2)(B), noting that, had the claim been timely filed, she would have denied it on the merits. And although the IJ credited the petitioner's testimony, she concluded that the petitioner's generalized fear of dangerous and violent conditions did "not give rise to a basis for a claim for . . . withholding of removal." Finally, the IJ found no evidence that the petitioner would be subject to torture "by or at the instigation of or with the consent or acquiescence of a public official," 8 C.F.R. § 1208.18(a)(1), should he be repatriated. Accordingly, she denied the petitioner's CAT claim.

The petitioner appealed to the BIA. On November 18, 2010, the BIA upheld the IJ's decision, finding that the petitioner was not entitled to asylum, withholding of removal, or CAT protection. The petitioner filed a timely petition for judicial review.

After the petition for review was docketed and fully briefed, we entered an order, with the parties' consent, remanding the case to the BIA. Our remand order was premised on the government's representation that it intended to exercise prosecutorial discretion with respect to the petitioner, at least temporarily, by administratively closing the case. When remanding, though, we retained jurisdiction over the petition for review.

Once the case had been remitted to the BIA, the government filed an unopposed motion to close the proceedings administratively. The government's motion explained that if "either party" desired for any reason "to place this matter back on the active calendar or docket, that party w[ould] file a motion to recalendar with this Board." The BIA granted the unopposed motion and administratively closed the case in April of 2013.

Shortly thereafter, the parties filed a stipulation of dismissal in this court. Although the order closing the case did not expressly address the status of the November 18 decision, the parties filed a stipulation making pellucid that the administrative closure removed the entry of that decision from the docket. In the parties' words: "there is no longer a final order of removal." This construction provided two benefits to the petitioner: it clarified that he was not subject to a live order of removal; and it effectively preserved his ability to reactivate his petition for review of the November 18 decision should the administrative closure be revoked.

Consistent with the parties' agreement, we dismissed the pending petition for judicial review and entered a judgment of voluntary dismissal. Thereafter, the case laid dormant for approximately five years. But after the 2016 presidential election and the ensuing change in administration, the government rethought its earlier decision to exercise prosecutorial discretion

favorably to the petitioner and moved before the BIA to "reinstate" the case. The petitioner offered no objection, and the BIA granted the motion: it decreed that its "original decision of November 18, 2010, now takes effect."

Displeased with the BIA's reinstatement of its earlier decision, the petitioner filed a new petition for judicial review on August 29, 2018. The same day, the petitioner asked the BIA to reconsider its order reinstating its earlier decision. Eschewing the merits of his claims for asylum, withholding of removal, and CAT protection, the petitioner's motion to reconsider focused exclusively on the BIA's order reinstating its earlier decision. On February 7, 2019, the BIA issued a written rescript denying the petitioner's motion to reconsider. The petitioner responded by filing yet another petition for judicial review. Once briefs were filed, we scheduled both petitions for oral argument on January 7, 2020; heard argument on both petitions as a unit; and took the matter under advisement.

The petitions for review, taken collectively, raise a common issue: whether the BIA acted appropriately in placing the case back on its docket and proceeding from where it left off before the case was administratively closed. This issue turns on the meaning of "recalendar," as that word was used by the parties in the government's unopposed motion, which led to the administrative closure.

"Administrative closure is a procedural convenience that may be granted if both parties to the removal proceedings agree, but it does not constitute a final order." Lopez-Reyes v. Gonzales, 496 F.3d 20, 21 (1st Cir. 2007). Instead, administrative closure "temporarily removes a case from . . . the Board's docket." Id. Such a temporary displacement of a case from the BIA's active docket effectively pauses the case. Following an administrative closure, either party may seek to undo the pause — as the government did here — by filing a motion to reinstate.

In this instance, the government's motion to reinstate was unopposed. When the BIA granted the unopposed motion, it recalendared the case, that is, it put the petitioner right back where he was before the parties agreed to the closure: subject to an operative order of removal, yet still able to secure appellate review. The petitioner takes umbrage: he points out that several years had passed since the case was administratively closed and argues that the BIA, either directly or by recourse to the IJ, had an obligation to explore interim developments before reinstating its earlier decision. We do not agree.

The propriety of the BIA's action hinges on the meaning of the word "recalendar" — the key word in the government's unopposed motion for administrative closure. The parties concede that no applicable statute or regulation supplies a definition of the word "recalendar" as used in this context. We therefore

- 6 -

interpret the word according to its plain and natural meaning. Cf. Correia v. Fitzgerald, 354 F.3d 47, 55 (1st Cir. 2003) (explaining that "[c]ourts should construe stipulations in accordance with accepted principles of general contract law"); Smart v. Gillette Co. Long-Term Disab. Plan, 70 F.3d 173, 178 (1st Cir. 1995) (stating that canon of contract interpretation "teaches that contracts containing unambiguous language must be construed according to their plain and natural meaning").

We conclude that "recalendar" means simply to reinstate the case to the active docket in the same posture as it occupied when it was paused for administrative closure. The dictionary defines the prefix "re-" as "again" and notes that it is to be "joined" to a "second element." Webster's Third New International Dictionary of the English Language Unabridged 1888 (Philip Babcock Gove ed., 2002). Here, the second element is the verb "calendar," which means "to enter (as a name or event) in a calendar or list." Id. at 316. Thus — in the present context — "recalendar" means to enter on the calendar again. That is exactly what the BIA did. Its 2018 order, like the government's motion, used the word "reinstate," and the accepted meaning of reinstate is "to . . . place again (as in . . . a former position)" or "to replace in an original or equivalent state." Id. at 1915. In other words, the BIA recalendared the petitioner's case by reinstating it, that is, by placing it back on the active docket in essentially the same

posture that it occupied immediately before the administrative closure occurred. It again became a fully briefed administrative appeal from the IJ's order of removal, awaiting only the entry of a final decision by the BIA.

In an effort to draw the sting from this reasoning, the petitioner argues that the five-year hiatus between the administrative closure and the case's reinstatement resulted in a final resolution based on an "old and stale record." He argues that due process required a new hearing to explore the effects of the passage of time on his claims for relief. This argument is woven out of whole cloth, devoid of any citation to relevant authority.

We add, moreover, that — as the petitioner's counsel acknowledged at oral argument — the petitioner could have asked the BIA either to reopen the case, see 8 C.F.R. § 1003.2(a), or to vacate the judgment and remand to the immigration court, see Falae v. Gonzáles, 411 F.3d 11, 14 (1st Cir. 2005) (noting that relevant statutes and regulations do not "recognize motions to remand as such," but motions to remand may be treated as motions to reopen).[1] He did neither — and he cannot ask this court for relief that he did not seek before the agency. See García v. Lynch, 821 F.3d

---

[1] Each of these motions offered the petitioner essentially the same potential remedy. See Falae, 411 F.3d at 14 (treating motion to remand as motion to reopen and reviewing for abuse of discretion).

178, 181-82 (1st Cir. 2016) (explaining that failure to raise argument before BIA precludes judicial review); cf. Meng Hua Wan v. Holder, 776 F.3d 52, 58 (1st Cir. 2015) ("Courts and agencies, like the Deity, tend to help those who help themselves.").

To be sure, the petitioner did file a motion to reconsider before the BIA. The filing of this motion, though, did not gain him any traction. Rather than asserting some substantive reason for reopening his case, his motion to reconsider merely asserted that the BIA had erred in its conception of what "recalendaring" meant and asked the BIA to reverse its earlier order. Put another way, the motion to reconsider was limited to the issue already addressed above: did the BIA act appropriately in recalendaring the case and giving effect to its earlier 2010 decision? As we already have explained, the petitioner cannot prevail on this issue.

Struggling to salvage his due process argument, the petitioner suggests that he was denied due process because he "was not properly notified" of the government's motion to reinstate. This argument draws its essence from a curious sequence of events. In 2013 — while the case was administratively closed — the petitioner's counsel attempted to apprise the BIA of a change in his office address (he apparently had moved up the street). The BIA rejected this submission because the case was closed. Thus, when the government filed its motion to reinstate in 2018, it

served a copy to counsel's old address.  This is the disparity on which the petitioner bases his lack-of-notice claim.

When put in perspective, this claim lacks force.  Shortly after the motion to reinstate was filed and before the BIA acted on it, the petitioner's counsel again entered his appearance (with his updated address).  The BIA then mailed a copy of the motion to reinstate to counsel at the updated address.  Counsel abjured any responsive filing, and the BIA granted the government's unopposed motion and reinstated its earlier 2010 decision over a month later.

Although it is apparent that the petitioner's counsel had actual notice of the motion to reinstate and ample time to reply to it, he nonetheless asserts that he could not have filed such a reply because he received notice only after the thirteen-day window for responding to motions, see 8 C.F.R § 1003.2(g)(3), had shut.  The BIA gave short shrift to this assertion when the petitioner included it in his motion to reconsider.  So do we.

We need not tarry.  For one thing, the petitioner never asked the BIA for an extension of the thirteen-day limit, and we have no reason to think that such an extension would have been denied.  See id. (memorializing BIA's discretionary authority to extend filing dates).  And for another thing, the petitioner has not advanced any arguments that he might successfully have raised in an opposition to the government's motion.  There was no

prejudice and, in the absence of prejudice, the petitioner's claim founders. See Lattab v. Ashcroft, 384 F.3d 8, 20 (1st Cir. 2004).

In sum, the petitioner received all of the process that was due. See Jones v. Flowers, 547 U.S. 220, 226 (2006) ("[D]ue process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" (quoting Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950))). Stripped of his due process claim, the petitioner's case becomes unglued. His briefing in this court fails to develop any claim of error addressed to the underlying merits decision. In short, the petitioner offers us no developed argumentation in support of a contention that the IJ and the BIA erred in rejecting his claims for asylum, withholding of removal, and/or CAT protection. Thus, he has waived any argument regarding the merits of his underlying claims. See Ahmed v. Holder, 765 F.3d 96, 101 n.2 (1st Cir. 2014); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). And although his briefs mention the possibility that he might "renew[] . . . his asylum claim" or "reappl[y]" for other relief, he has failed to develop these possibilities. See Zannino, 895 F.2d at 17 ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

The petitioner has a fallback position. He suggests that his previous immigration proceedings are a nullity because the IJ (and, thus, the BIA) lacked jurisdiction over his case. This suggestion rests on the notion that the Notice to Appear (NTA) that initiated his removal proceedings did not include the time and place of his initial hearing before the immigration court. In support, he says that the inclusion of such data was required both by statute, see 8 U.S.C. § 1229(a)(1)(G)(i), and by the Supreme Court's decision in Pereira v. Sessions, 138 S. Ct. 2105, 2109-10 (2018). This suggestion is foreclosed by the case law and, thus, is a dead letter.

In the wake of Pereira, we have squarely rejected the jurisdictional thesis that the petitioner advances. See Goncalves Pontes v. Barr, 938 F.3d 1, 7 (1st Cir. 2019). Our decision in Goncalves Pontes explicates that, in circumstances such as those that are at issue here, immigration court jurisdiction is governed by regulation, see 8 C.F.R. §§ 1003.13-1003.14(a), not by the statute on which the petitioner relies. See Goncalves Pontes, 938 F.3d at 3-5. These regulations do not mandate that the time or place of the initial hearing be included in an NTA that commences a removal proceeding. See id. at 4 (citing 8 C.F.R. § 1003.18(b)).

In this case, the petitioner's NTA complied with the regulations, and he appeared before the immigration court as ordered. Under the rule in Goncalves Pontes, "[i]t follows that

- 12 -

because the petitioner's NTA complied with the regulations . . . , it was effective to confer jurisdiction upon the immigration court."  Id. at 7.

Goncalves Pontes controls our decision here.  After all, the law of the circuit doctrine requires us to adhere to prior panel decisions, closely on point, with but few exceptions.  See, e.g., United States v. Gonzalez, ___ F.3d ___, ___ (1st Cir. 2020) [No. 18-1597, slip op. at 20]; United States v. Barbosa, 896 F.3d 60, 74 (1st Cir.), cert. denied, 139 S. Ct. 579 (2018).  The exceptions to this doctrine are both "narrowly circumscribed" and "hen's-teeth-rare."  Barbosa, 896 F.3d at 74 (quoting San Juan Cable LLC v. P.R. Tel. Co., 612 F.3d 25, 33 (1st Cir. 2010)).  No such exception has any bearing in the circumstances at hand.  It follows inexorably that the petitioner's jurisdictional attack fails.

We need go no further.  For the reasons elucidated above, the petitions for judicial review are

**Denied.**

- 13 -