8 F.3d 32
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Walter NEWBERRY Defendant-Appellant.
 No. 91-50339.
 United States Court of Appeals, Ninth Circuit.
 Memorandum Disposition March 8, 1993.
Resubmitted June 15, 1993.
Decided Oct. 12, 1993.
 
 Before: CANBY, BOOCHEVER, and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This appeal from the district court's denial of a motion to suppress evidence is before us following a remand hearing at which the district court re-adopted its initial factual findings regarding the discovery of a loaded .22 magnum semi-automatic pistol and several baggies of marijuana in a briefcase belonging to appellant James Newberry.
 
 
 3
 * The district court concluded at the initial suppression hearing that California Highway Patrol Officer Frederick Laurn revealed the gun by lifting a partition while Newberry was looking through the briefcase for identification. The court held that the officer's action was "justified by concern for officer safety." R.T. 2/26/91 at 136. In our memorandum disposition remanding to the district court for additional or revised findings of fact, we held that, accepting the district court's initial findings, the court erred in holding the officer's search of the briefcase valid under Terry v. Ohio, 392 U.S. 1 (1968). We take this occasion to explain more fully why Terry did not justify a search of the briefcase.
 
 
 4
 In accordance with Supreme Court precedent, we have previously held that an objectively reasonable concern for safety does not justify a Terry search if the officer did not subjectively entertain that concern. United States v. Prim, 698 F.2d 972, 975 (9th Cir.1983) ("Although the existence of reasonable suspicion or probable cause is judicially viewed under an objective standard, it is a standard applied to the actual and/or perceived belief of the law enforcement officer as he either stops and detains or engages in search and seizure."); see United States v. Lott, 870 F.2d 778, 783-84 (1st Cir.1989) ("[W]e do not read [Terry ] as permitting a frisk where, although the circumstances might pass an objective test, the officers in the field were not actually concerned for their safety.... An officer cannot have a reasonable suspicion that a person is armed and dangerous when he in fact has no such suspicion.... [A]n officer must have an actual suspicion that weapons are present before a Terry search can be made....").
 
 
 5
 Our conclusion that there was no basis for a Terry search is compelled by Officer Laurn's candid testimony at the suppression hearing:
 
 
 6
 Q. Now, at that point [when Newberry opened the briefcase], you had no reason to believe that Mr. Newberry was armed, did you?
 
 
 7
 A. At that point?
 
 
 8
 Q. Yes.
 
 
 9
 A. I could see he wasn't armed.
 
 
 10
 Q. Okay. Excuse me?
 
 
 11
 A. I could see that he wasn't armed.
 
 
 12
 Q. Okay. Okay. And you had no reason to believe that Mrs. Newberry was armed at that point, right?
 
 
 13
 A. Right. I could see she wasn't armed either.
 
 
 14
 Q. Okay. And you had no reason to believe that there was--there were any guns in the vehicle, correct?
 
 
 15
 A. Up to that point, no.
 
 
 16
 * * *
 
 
 17
 * * *
 
 
 18
 The Court: [I]f you had thought there was a gun back there, would you have allowed him to open the hatchback.
 
 
 19
 A. Well, Your Honor, I always suspect there might be a gun whenever I make a stop on all cars. I always suspect that. I'm always on the guard for it.
 
 
 20
 * * *
 
 
 21
 * * *
 
 
 22
 Q. Would you agree with this, you had no specific reason to believe that there was a weapon in that vehicle at that time, other than your general suspicion that--
 
 
 23
 A. Right.
 
 
 24
 Q. --every time you pull a car over?
 
 
 25
 A. Right. That's correct. I'll agree with that.
 
 
 26
 * * *
 
 
 27
 * * *
 
 
 28
 Q. [I]f you knew for sure or if you had a good reason to believe there was a gun in that briefcase, you would not have allowed him to open that briefcase?
 
 
 29
 A. Okay. That's true.
 
 
 30
 R.T. 2/25/91 at 48-50. Officer Laurn later confirmed that he had no specific concerns prior to the discovery of the gun:
 
 
 31
 Q. [I]t would be fair to say, would it not, that you had a concern for your safety at that point [after the gun was found], more than your general concern for your safety, whenever you pull somebody over. Would that be fair to say?
 
 
 32
 A. After I found the weapon, yes.
 
 
 33
 R.T. 2/26/91 at 7 (emphasis added).
 
 
 34
 Moreover, Officer Laurn's actions at the scene were inconsistent with a particularized suspicion that Newberry was armed and dangerous. He never conducted a pat-down search of either James or Karen. Nor did he make any attempt to handcuff or otherwise restrain the Newberrys at any time prior to their arrest, despite the fact that they were continually moving around and approaching him in disregard of his instructions. Finally, although Officer Laurn could have either denied Newberry's request to look in the briefcase or sought Newberry's consent to a quick check of the contents before allowing Newberry access, he permitted the suspect to open the briefcase on his own: he later testified that he would not have done so had he had "good reason to believe there was a gun in that briefcase." In short, "the officer[ ] made no attempt to discern if [Newberry] was armed, thereby strongly suggesting that [he] had not the slightest indication [Newberry] was armed." United States v. Robertson, 833 F.2d 777, 781 (9th Cir.1987).
 
 
 35
 We thus do not reach the question whether, had Officer Laurn in fact suspected that the Newberrys were presently armed and dangerous, such a suspicion would have been objectively reasonable. The lack of any subjective concern for safety beyond the general suspicion that exists on every vehicle stop renders even the limited intrusion of a Terry search unconstitutional. To hold otherwise would authorize a Terry frisk on every vehicle stop. While we share the district court's concern for the great danger facing highway policemen, the law remains that trying to avoid "any surprises" during a legitimate Terry stop is an inadequate basis for a Terry frisk. United States v. Thomas, 863 F.2d 622, 629 (9th Cir.1988).
 
 II
 
 36
 Our conclusion that the facts as the district court found them do not support a Terry search, however, does not resolve this case. We of course recognize that the district court's factual findings are entitled to great deference. Fed.R.Civ.P. 52(a); Service Employees Int'l Union v. Fair Political Practices Comm'n, 955 F.2d 1312, 1317 n. 7 (9th Cir.), cert. denied, 112 S.Ct. 3056 (1992). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985). After careful consideration and review of the record, however, we have concluded that the district court's version of the events leading up to the discovery of the gun is unsupportable. We may reverse a district court's findings as clearly erroneous when we "on the entire evidence [are] left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). While it is with some hesitancy that we reject the findings of a skilled and experienced trial judge, we are left with such a "definite and firm conviction" in this case.
 
 
 37
 * At the initial hearing on Newberry's motion to suppress evidence, Officer Laurn and the Newberrys presented wholly incompatible versions of the events leading up to the gun's discovery. Officer Laurn testified that he immediately saw the gun when James opened the briefcase. The Newberrys testified that James opened the briefcase with the partition in the down position concealing the weapon, searched through the upper compartments, and closed the case, after which the officer seized the briefcase, reopened it, lifted the partition, and removed the gun from a closed manila shipping envelope. The district court entirely rejected the Newberrys' testimony, but stated that it found the officer's testimony "internally inconsistent" because "[t]he [partition] does not come up when the briefcase is opened by itself." R.T. 2/26/91 at 133. The court then made these findings:
 
 
 38
 I do believe the officer's general credibility is good. I accept most of the officer's testimony. I don't believe he remembered the exact sequence correctly because of the internal discrepancy in the officer's testimony with regard to the pictures showing how it looked and the fact that it couldn't look that way until the lid was lifted. And therefore, I conclude that the lid was lifted by the officer to look inside.
 
 
 39
 Id. at 136 (emphasis added). Thus the court's reason, and the only reason given on the record, for finding that the officer lifted the partition was its belief that the partition could not be attached to the briefcase lid.
 
 
 40
 Our initial review of the suppression hearing transcript left us confused as to the design of the briefcase and the various straps and flaps to which the testimony referred. We therefore examined the briefcase. Our examination cast doubt on the district court's findings.
 
 
 41
 Newberry testified about a "flap" connecting the partition to the briefcase lid that had been "gone for years." Id. at 75. Although the district court observed that the partition could be snapped to a strap on the interior of the briefcase lid, id. at 62, thereby causing the partition to be lifted along with the briefcase lid, the court later found that "[t]he [partition] does not come up when the briefcase is opened by itself," id. at 133. When we looked at the briefcase, we saw a strap that attached to the partition. As was clarified at the hearing on remand, this strap was designed to hold back the upper pockets on the inside of the briefcase lid, and there was at one time another strap that was meant to hold up the partition. Nevertheless, the district court observed, both at the suppression hearing and on remand, that the existing strap could also be used to attach the partition to the lid. Id. at 62; R.T. 5/3/93 at 15, 41. Thus the court's initial finding that the partition could not possibly have come up when the briefcase was opened was clearly erroneous, as the district court itself recognized on remand. R.T. 5/3/93 at 20, 29, 48.
 
 B
 
 42
 As indicated above, the district court initially rejected a key part of the officer's credible and otherwise fully accepted testimony on the basis of an erroneous premise. At the remand hearing, however, the district court adopted a new reason for finding that the officer did not see the weapon when Newberry opened the briefcase. The court reasoned that it was unlikely that an experienced methamphetamine dealer such as Newberry would open a briefcase with a gun in plain sight. This rationale is not mentioned anywhere in the initial transcript. Nevertheless, the court stated three times that the experienced dealer rationale had been the one and only reason for its finding that the gun was under the partition. Id. at 7-8, 12-13, 45.
 
 
 43
 We find it necessary to reject the court's revised premise as also clearly erroneous under the facts of this case. First, although this was the only area in which the court rejected Officer Laurn's testimony, the premise is inconsistent with Newberry's own testimony that he didn't know the gun was in the briefcase--testimony that the district court acknowledged it had forgotten. Id. at 46. Second, the premise assumes that Newberry was in fact looking for identification in the briefcase. The evidence belies this assumption. Karen Newberry gave a false last name to the officer and told him that she only knew Newberry's first name, which was "Joe." When the officer asked Newberry his name, Newberry replied that it was "Joe Stallon." There is no contention that Newberry had an established alias as "Joe Stallon" or that he had identifying documents under that name. In view of the fact that both James and Karen had already given false names to the officer, Newberry's claim that he was looking in the briefcase for identification was a patent lie.
 
 
 44
 Assuming, however, that the judge was revising his findings from those of the original hearing, giving due deference to the district court's more extensive experience in the trial of drug cases, we cannot hold that it would be clearly erroneous in finding, in the abstract, that an experienced methamphetamine dealer would not open a briefcase with a weapon in plain sight. What a hypothetical experienced dealer would do, however, is not determinative of this case. Here we have a convicted dealer who was sentenced to five years imprisonment. He was released on $2500 bond. He had failed to appear for pretrial supervision. The bond was forfeited and a bench warrant issued. Thus when he was stopped by Officer Laurn, he was a fugitive from justice. If his correct identity were ascertained, he faced immediate arrest. Such an arrest would also lead to a search of the car which contained baggies of marijuana and 1.5 kilograms of methamphetamine. Therefore, the question presented is whether an experienced methamphetamine dealer, who has given a false identification, who knows that as soon as his real identity is ascertained he will face lengthy incarceration, would open a briefcase containing a loaded weapon with a bullet in the chamber. We could once more remand to the district court as we would prefer that it initially make the necessary inferences. Because, however, under these circumstances, we can conceive of no reason why Newberry asked to open the briefcase other than to obtain the weapon which effort was thwarted by Officer Laurn's alertness, we find no reason to dispute the officer's testimony that the weapon was in plain sight when the briefcase was opened.
 
 C
 
 45
 We give special deference to a trial court's credibility findings. United States v. Ramos, 923 F.2d 1346, 1356 (9th Cir.1991). In rejecting the district court's findings of fact in this case, however, we do not contradict the court's credibility findings, but adopt them. The court gave no credence to the Newberrys, even in the single area where it rejected the officer's testimony. Conversely, the court found that Officer Laurn was a credible witness and accepted virtually all of his testimony. Once the district court's clearly erroneous premises are eliminated, there is no reason not to accept the officer's testimony in full and find that the gun was exposed when Newberry opened the briefcase. The alternative is to adopt a version of events that is supported by neither the officer's testimony, nor Newberry's testimony, nor any other evidence in the record.
 
 
 46
 When we remanded this case based on perceived mistaken assumptions and inconsistencies in the district court's findings, we could not yet say that those findings were clearly erroneous in view of the potential for clarification. Given the court's acknowledgment of the erroneous premise on which it expressly based those initial findings, and its replacement of that premise with an equally erroneous one, we now give effect to the district court's credibility determination and conclude that Officer Laurn saw the gun when the briefcase was opened. The gun was then properly seized under the plain view exception to the warrant requirement. See United States v. Nance, 962 F.2d 860, 862-83 (9th Cir.1992). Consequently, we affirm the district court's denial of Newberry's motion to suppress. See United States v. Holzman, 871 F.2d 1496, 1512 (9th Cir.1989) (denial of motion to suppress may be affirmed on any ground supported by the record).
 
 
 47
 AFFIRMED.
 
 
 48
 WILLIAM A. NORRIS, Circuit Judge, dissenting.
 
 
 49
 The district court found that the gun was not visible when Newberry opened his briefcase and that the officer therefore must have discovered the gun by reaching inside. Accordingly, the court determined that the officer was not credible with respect to his specific testimony that he spotted the gun when Newberry opened the briefcase. On this record, I cannot hold that these findings and credibility determinations were clearly erroneous, notwithstanding the court's comment that he found the officer generally more credible than Newberry.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3