FILED
United States Court of Appeals
Tenth Circuit

December 13, 2011

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

IVAN ROCHIN,

      Defendant-Appellant.

No. 11-2024

---

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:10-CR-00766-JB-1)**

---

Brian A. Pori, Federal Public Defender, Albuquerque, New Mexico, for the Defendant-Appellant.

Andrea W. Hattan, Assistant United States Attorney (Kenneth J. Gonzales, United States Attorney, with her on the brief), Las Cruces, New Mexico, for the Plaintiff-Appellee.

---

Before **KELLY, O'BRIEN,** and **GORSUCH**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

---

     No one likes being pulled over for a traffic violation. Still, for most drivers the experience usually proves no more than an unwelcome (if often self-induced) detour from the daily routine. But not every traffic stop is so innocuous.

Sometimes what begins innocently enough turns violent, often rapidly and unexpectedly.  Every year, thousands of law enforcement officers are assaulted — and many are killed — in what seem at first to be routine stops for relatively minor traffic infractions.  *See Maryland v. Wilson*, 519 U.S. 408, 413 (1997); Federal Bureau of Investigation, *Law Enforcement Officers Killed and Assaulted, 2010*, Figure 4, available at http://www.fbi.gov/about-us/cjis/ucr/leoka/ leoka-2010/officers-assaulted/fig-4-circumstances-10.  This case asks us to address what an officer may lawfully do to guard against adding himself to those regrettable statistics.

The Fourth Amendment stands as a bulwark against unreasonable governmental searches and seizures.  It applies during traffic stops just as it does to all encounters with law enforcement.  But the Amendment's prohibition of *unreasonable* searches and seizures bears with it the implicit acknowledgment that *reasonable* searches and seizures are another matter.  And Fourth Amendment jurisprudence has long recognized the reasonableness of allowing law enforcement officers to pat down or frisk lawfully detained individuals who might pose a threat to their safety or the safety of others nearby.  *See Terry v. Ohio*, 392 U.S. 1, 23-24 (1968).  Of course, the Amendment's ever-present reasonableness requirement places strict limits on the scope or nature of the frisk an officer may administer.  Because the aim of a pat down is to ensure the physical safety of the officer and others, any frisk must be reasonably designed to discover "concealed

objects which might be used as instruments of assault." *Sibron v. New York*, 392 U.S. 40, 65 (1968). But if a reasonably tailored pat down reveals an object that appears to meet that description, the officer may then (and only then) "reach inside the suspect's clothing and remove it" without offending the Fourth Amendment. *United States v. Harris*, 313 F.3d 1228, 1237 (10th Cir. 2002).

In our case, Mr. Rochin doesn't dispute the legality of his initial traffic stop (everyone agrees his registration had long expired). Neither does he dispute Officer Joe Moreno had constitutionally sufficient reason to frisk him (Mr. Rochin concedes the officer had reason to believe he was armed and dangerous). Instead, and much more narrowly, Mr. Rochin argues that Officer Moreno exceeded the scope of a permissible protective frisk when he (Officer Moreno) removed objects from his (Mr. Rochin's) trouser pockets. By way of remedy, Mr. Rochin asks us to suppress the items the officer found and, of necessity, to dismiss the criminal charges against him that followed from the encounter.

But narrow though Mr. Rochin's argument may be, it is no more persuasive for it. Working alone, Officer Moreno stopped Mr. Rochin's car for an expired registration at 2:30 in the morning. As the officer approached the vehicle, a radio dispatcher warned him that the vehicle and its driver were suspected of involvement in a drive-by shooting — and that the driver might be armed and dangerous. When the officer reached the car and asked for a driver's license, vehicle registration, or insurance information, Mr. Rochin could provide none. At

this point Officer Moreno, fearing for his safety, asked Mr. Rochin to step out of his car for a protective pat down. During the brief frisk that followed, Officer Moreno felt two bulges, one filling each of Mr. Rochin's trouser pockets. The objects felt long and hard, but the officer couldn't tell exactly what they were. So he asked Mr. Rochin in Spanish, "quien es?" or "*who* is this?" Of course, the officer meant to ask "*what* is this?" But the officer's garbled question led to an equally garbled reply, with Mr. Rochin responding "no sabe," or "*he* doesn't know," which the officer later said he understood to mean "*I* don't know." In any event, after this exchange left Officer Moreno none the wiser about the objects in Mr. Rochin's pockets, he decided to remove them for inspection. When they turned out to be glass pipes containing drugs, Officer Moreno arrested Mr. Rochin for drug possession and, after a later inventory search of the car turned up a gun, Mr. Rochin was charged with and eventually convicted of a federal firearm offense.

Mr. Rochin argues that Officer Moreno violated the Fourth Amendment because he removed the items for inspection when he had no idea what they were. But this argument makes the common mistake of emphasizing the officer's (subjective) state of mind. Here, as is typically the case in the Fourth Amendment context, the subjective beliefs and knowledge of the officer are legally irrelevant. *See United States v. DeGasso*, 369 F.3d 1139, 1143 (10th Cir. 2004); *Whren v. United States*, 517 U.S. 806, 813 (1996). Instead, because

- 4 -

reasonableness remains the Amendment's touchstone, the constitutional inquiry turns on whether an objectively reasonable officer could have feared that the detected objects might be used as instruments of assault. *See Sibron*, 392 U.S. at 65; *United States v. Holmes*, 385 F.3d 786, 790 (D.C. Cir. 2004).

And we don't hesitate to hold that test satisfied here. A reasonable officer could have concluded that the long and hard objects detected in Mr. Rochin's pockets might be used as instruments of assault, particularly given that an effort to ask Mr. Rochin about the identity of the objects had proved fruitless. To be sure, the pipes Mr. Rochin turned out to have aren't conventionally considered weapons. But a reasonable officer isn't credited with x-ray vision and can't be faulted for having failed to divine the true identity of the objects. And neither is "the scope of a *Terry* frisk . . . limited to [traditional] weapons." *Holmes*, 385 F.3d at 791. During a lawful pat down an officer may remove not just objects that seem to be guns, knives and the like, but also any other objects that he reasonably thinks "might be used as instruments of assault" against him or others who may be in the area. *Sibron*, 392 U.S. at 65. And two hard and long objects filling a suspect's trouser pockets "fit that description well," better than the "hard, square object" at issue in *Holmes*, 385 F.3d at 791, and better than many other objects courts have held officers may lawfully remove during *Terry* stops, *see, e.g.*, *United States v. Rahman*, 189 F.3d 88, 120 (2d Cir. 1999) (envelope); *United States ex rel. McNeil v. Rundle*, 325 F. Supp. 672, 677 (E.D. Pa. 1971) (watch).

None of this is to say we necessarily endorse (or reject) the conclusions reached about the objects at issue in these other cases. It is instead only to emphasize by comparison how much more (objectively reasonable) reason there was for an officer to worry about the objects in the case at hand.

In arguing for a different result, Mr. Rochin draws our attention to *Minnesota v. Dickerson*, 508 U.S. 366 (1993), and *United States v. Albert*, 579 F.3d 1188 (10th Cir. 2009). But neither of these cases can save his cause. They simply hold that an officer cannot continue to explore a defendant's clothing after determining it doesn't contain any threatening object (except if, in the course of the frisk, he has identified objects he immediately recognizes as contraband). *Dickerson*, 508 U.S. at 377-78; *Albert*, 579 F.3d at 1195. By definition, exactly none of this speaks to the situation before us — where the identity of the objects felt remained unknown after the frisk and a reasonable officer could have thought they posed a threat. In these circumstances, *Dickerson*'s and *Albert*'s admonitions against further investigation simply do not apply. *United States v. Richardson*, 657 F.3d 521, 524 (7th Cir. 2011).

Finally, Mr. Rochin suggests that a reasonable officer may not remove objects from a suspect's pockets unless and until he can confirm, through further tactile investigation, exactly what they are. Had Officer Moreno followed this procedure, Mr. Rochin submits, he would have realized eventually that he had no reason to be concerned about them. Mr. Rochin, however, cites no authority for

his proposed protocol — and for good reason.  The Fourth Amendment is not a game of blind man's bluff.  It doesn't require an officer to risk his safety or the safety of those nearby while he fishes around in a suspect's pockets until he can correctly guess the identity of and risks associated with an unknown object.  All while standing in extreme proximity to someone already suspected of being dangerous.  The Fourth Amendment requires reasonableness, not such potentially reckless punctiliousness.  And where (as here) an otherwise lawful protective frisk suggests an item an objectively reasonable officer could believe might be used as an instrument of assault, the officer may — reasonably and so consistently with the Fourth Amendment — "reach inside the suspect's clothing and remove it" without further delay.  *Harris*, 313 F.3d at 1237.

Affirmed.